*Attachment 1*
*Amended Complaint*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTHONY TRUPIA,

   Plaintiff,

   v.

JOHN ROBERTS, on behalf of the himself and the
Judges and Justices of the Federal Courts;
WILLIAM R. BAY, on behalf of himself and the
members of the American Bar Association
D. KENYON "KEN" WILLIAMS, on behalf of himself
and the members of the State Bar Associations;

   Defendants.

CASE NO. 5:25-cv-00621-HE

DEFENDANT CLASS ACTION COMPLAINT

CLASS ACTION

DEMAND FOR JURY TRIAL

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 2 |
| II. | THE PARTIES | | 2 |
| III. | JURISIDCTION AND VENUE | | 4 |
| IV. | BACKGROUND | | 5 |
| | A. | Pleading | |
| | B. | 12(b) Motion to Dismiss | |
| | C. | Pro Se Leniency | |
| | D. | Civil Jury Trials | |
| | E. | Federal Removal | |
| | F. | E-File | |
| V. | ALLEGATIONS | | 29 |
| | A. | Allegations | |
| | B. | The Cases I Have Filed | |
| | C. | The Cases I Intend to File | |
| | D. | Damages | |
| VI. | E-FILE AND DISMISSAL | | 49 |

| VII. | CAUSES OF ACTION | 50 |
| VIII. | PRAYER FOR RELIEF | 53 |
| IX. | DEMAND FOR JURY TRIAL | 55 |

## I.    INTRODUCTION

1.  This complaint sets forth how the regularly conducted business practices of defendants, JOHN ROBERTS, Chief Justice to the United States Supreme Court, the Judges and Justices of the Federal Courts, WILLIAM R. BAY, the president of the American Bar Association, the members of the American Bar Association, MILES PRINGLE, president of the Oklahoma Bar Association, and the members of the various state bar Associations, collectively the 'LEGAL CLASS,' amount to a deliberate and purposeful chilling and deprivation of the civil rights of all normal American citizens that are not rich or part of the LEGAL CLASS, including Plaintiff ANTHONY TRUPIA. Defendants have instituted and uphold a large number of overly complicated, contrived methods for making it somewhere between difficult to impossible for normal people to obtain meaningful access to the courts. Corporate abuse is at an all time high, and this lack of access to the courts has contributed to unprecedented social strife as will be documented in this complaint. As a consumer, I have *no power* to hold large corporations to account for illegal wrongdoing of any kind without access to the jury trial guaranteed to me by the 7th amendment, and over four years I have come to the conclusion that I have little if any ability to use this civil right due to the machinations and malfeasance of the LEGAL CLASS and their monopoly hold on meaningful court access.

## II.    THE PARTIES

2.  I, Plaintiff ANTHONY TRUPIA (TRUPIA) am an angry consumer. I am not a con artist, vexatious litigant, or frivolous litigant of any kind. I filed 3rd party complaints against large corporations for a decade without seeing any impact before resorting to filing lawsuits. For example, I have over **700 copies of complaints** in my email box filed with State Attorneys General, the Better Business Bureau, the CFPB, and many, many other consumer protection agencies, dating back to at least 2010. These agencies simply cannot keep up with the massive amount of corporate malfeasance happening. Filing complaints with third party agencies is not effective and does not discourage corporate malfeasance at large. Further, each and every legal complaint I have filed is about well documented mass-malfeasance, activities that corporations are applying illegally to customers in mass, every time. My

complaints are about illegal systems much more than they are about individual illegal events. My complaints are always well supported by complaints from the Better Business Bureau and government agencies. I should not have to defend my status or character in any complaint, but it seems prudent at this point because defendant parties to this action continue to bring it up frivolously.

3. I reside in Oklahoma City, Oklahoma, where I am a resident and home owner.

4. JOHN ROBERTS (ROBERTS) is the Chief Justice of the American Supreme Court. ROBERTS also heads the Judicial Conference of the United States, which is central to this suit. The Judicial Conference of the United States overwhelmingly advises the various federal courts in determining the Federal Rules of Civil Procedure (FRCP) and the local rules of the Federal District Courts. ROBERTS is the proposed class representative for the Judges and Justices of the United States Federal Courts and for the Judges and Justices of the various State courts. As Chief Justice and head of the Judicial Conference, ROBERTS is not only well qualified, but the best qualified person to represent the class, JUDGES.

5. The Judges and Justices of the United States Courts, federal and state, are a proposed defendant class (JUDGES). The degradation of the United States court system, and the chilling and deprivation related activities described in this complaint are conscious choices that each of these JUDGES continues to propagate through actions and inactions described in this complaint. The aim of the JUDGES in this complaint, in the activities described, is not the administration of justice, it is the chilling of the administration of justice, and opposite their legal duties. While many of these activities are conducted under the color of law, the aim and result of the activities of these JUDGES is well outside the scope of their duties and done in greater service to their financial profession, to the LEGAL CLASS, with whom their ultimate loyalty rests.

6. WILLIAM R. BAY (BAY) is the president of the American Bar Association, and has been a member of the ABA House Delegates for over 20 years. BAY is in the top position of authority in the ABA and an accomplished attorney, he is well qualified and situated to represent the class, ABA MEMBERS.

7. The practicing members of the American Bar Association (ABA MEMBERS), excluding JUDGES, are a proposed defendant class. The American Bar Association (ABA) is the world's largest voluntary association of lawyers, judges, and other legal professionals. The American Bar Association, and it's members, have a long history of subverting justice to

3

protect their monopoly on the practice of law. The gatekeeping functions of the ABA are well documented in case law and by ABA MEMBERS themselves in many essays that will be included in this complaint.

8. D. Kenyon 'Ken' Williams (WILLIAMS) is the President of the Oklahoma Bar Association, sworn in on January 19, 2025. WILLIAMS is well qualified and situated to represent the class, STATE BAR MEMBERS, due to his leadership role in overseeing bar practices alleged to deprive access.

9. The remaining practicing members of the various State Bar Associations (STATE BAR MEMBERS), not included in the two classes defined, are the final proposed defendant class. While there are technically legal and financial distinctions between the ABA and the various STATE BARs, they are thin. The schools the STATE BARs allow attorneys from are overwhelmingly ABA approved (205 of 237 law schools). The STATE BARs overwhelmingly allow attorneys to practice across their jurisdictions without additional licensing. Eighteen state bar associations limit eligibility to sit for the state bar examination solely to graduates of ABA-accredited law schools.  Each and all of the state bars, allow for the actions and inactions of their professional members that amounts to the civil rights deprivation described in this complaint. The various State Bars, and the STATE BAR MEMBERS, are collectively subverting the legal process for financial gain, in the many ways listed in this complaint, to preserve their monopoly on access to the courts.

10. The members of the proposed classes JUDGES, ABA MEMBERS, and STATE BAR MEMBERS are overwhelmingly referred to together throughout this complaint, as the LEGAL CLASS. The only important factual distinction between any of these class members is whether they are practicing as JUDGES or attorneys(ABA MEMBERS and STATE BAR MEMBERS), and those distinctions are addressed on a case by case basis throughout this complaint.

III.    **JURISDICTION AND VENUE**

11. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as it arises under the laws of the United States, and under 28 U.S.C. § 1367 because supplemental jurisdiction is provided for claim(s) of common law along with the federal claims under 1331.

12. Venue properly lies with this Court because Plaintiff TRUPIA resides within this District and because a substantial part of the events or omissions giving rise to the claims described herein occurred in this District, and in this court.

4

IV.    **BACKGROUND**

13. The methods, actions, and inactions (PRACTICES) of defendants described in this suit are not all-inclusive; they are simply the PRACTICES I have witnessed personally many times and wish to challenge in this complaint. This complaint will detail problems with PRACTICES associated with Pleading, 12(b) Motions to Dismiss and Dilatory Motions generally, judicial interpretations of Pro Se leniency, the 7th Amendment and Civil Jury Trials, Federal Removal, E-File of documents in civil cases, and will clearly detail how the sum of these PRACTICES amounts to illegal gatekeeping, a monopoly hold of the American legal system, and illegal deprivation of civil rights for the masses. A historical background for these practices is helpful to show the wide reach of these PRACTICES, how they differ from legally required practices, and the harms associated with them.

A. Pleading

14. In 1938, the United States Federal Court system moved from an older pleading system, known as "Fact Pleading," to a newer standard called "Notice Pleading." The reason for this change was a growing inability of parties, even parties with professional representation, to obtain legal decisions based on merit. Richard L. Marcus writes about this change extensively in "THE REVIVAL OF FACT PLEADING UNDER THE FEDERAL RULES OF CIVIL PROCEDURE, COLUMBIA LAW REVIEW, VOL. 86, APRIL 1986, NO. 3," (REVIVAL OF FACT PLEADING):

   a. *"As pleading practice prospered, decisions on the merits became increasingly infrequent."*

   b. *"Common law pleading, which was originally oral, evolved over centuries into an increasingly detailed written exercise. During the same period, the forms of action were developing, and their limitations reinforced pleading difficulties. In order to prevail, the common law plaintiff had to choose the correct form of action. He and his lawyer then embarked on an exchange of pleadings with the defendant that was designed ultimately to produce a single issue for resolution by a judge or trial by a jury, with trial itself as something of an afterthought to the pleading process."*

   c. *"Over time, it became necessary to use highly stylized verbal formulations to present even simple grievances. These expressions-known as "color"- often had little relation to the underlying facts of the particular case. They certainly told the defendant little or nothing about the plaintiff's claims, and the defendant would*

*remain in the dark until trial because discovery was limited or nonexistent. Nevertheless, the defendant could take comfort in the prospect that the plaintiff could ultimately lose because his lawyer bungled the pleading war.*"

d. "*Popular dissatisfaction with this situation in England led, in the late nineteenth century, to abandonment of the forms of action and simplification of pleading. A movement for similar reforms in this country was spearheaded by David Dudley Field, the drafter of the New York code adopted in 1848. While one may question whether American judges were really so formalistic as the reformers suggested, it was clear that the Field Code reforms were intended to eliminate decisions based on technicalities. In place of stylized verbiage, the Code directed that the complaint contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.*""

e. "*In particular, there was great difficulty distinguishing ultimate facts from conclusions since so many concepts, like agreement, ownership and execution, contain a mixture of historical fact and legal conclusion. Pleading decisions caused increasing difficulty for even the most common claims. For example, the detail needed to allege negligence was regularly recalibrated. Such fencing among lawyers led to stagnation that interfered with resolution of disputes on their merits.*"

15. The Field Code was the basis for the modern pleading system, "Notice Pleading," included in the new FRCP. The modern FRCP, including the modern pleading system, based around the Field Code, was established in 1938, as Benjamin Spencer describes in "*The Restrictive Ethos in Civil Procedure,*" (THE RESTRICTIVE ETHOS) to promote open access to the courts and to facilitate a resolution of disputes on the merits: "*Those of us who study civil procedure are familiar with the notion that federal civil procedure under the 1938 Rules was generally characterized by a "liberal ethos," meaning that it was originally designed to promote open access to the courts and to facilitate a resolution of disputes on the merits.*" Spencer states: "*Also promoting the vision of open access espoused by the drafters was the introduction of simplified 'notice pleading,' which was designed to minimize greatly the number of cases dismissed on the pleadings.*"

16. Under the new Rules of Federal Procedure (FRCP) established in 1938, in order to file a complaint, the pleading system required (<u>and still requires</u>) from a plaintiff only "*a short*

*and plain statement of the claim showing that the pleader is entitled to relief*," FRCP 8(a)(2). As Marcus writes in REVIVAL OF FACT PLEADING, the purpose of these changes was to disfavor rulings on pleadings and technicalities, and to encourage judicial decisions based on merit, by jury trial:

    a. *"Sobered by the fate of the Field Code, Dean Clark and the other drafters of the Federal Rules set out to devise a procedural system that would install what may be labelled the "liberal ethos," in which the preferred disposition is on the merits, by jury trial, after full disclosure through discovery. See Clark, The Handmaid of Justice, 23 Wash. U.L.Q. 297, 318-19 (1938) (denouncing attempts to resolve cases on pleadings and asserting that "in the case of a real dispute, there is no substitute anywhere for a trial")"*

    b. *"Under the Federal Rules of Civil Procedure, a complaint is not an anagrammatic exercise in which the pleader must find just exactly the prescribed combination of words and phrases."* (quoting Judge John Minor Wisdom).

    c. Marcus documents how Clark actually disfavored dilatory or dispositive motions so strongly he favored eliminating pleading motions altogether, and how the drafters of the FRCP greatly limited them: *"At first, Clark favored eliminating pleading motions altogether. Ultimately other voices held sway, but Rule 8(a)(2) was drafted carefully to avoid use of the charged phrases "fact," "conclusion," and "cause of action." To make the point clearer, the drafters prepared a series of form complaints that were by definition sufficient to satisfy the new standard. These forms were startlingly brief. For example, Form 9 preempted decades of pleading litigation by declaring sufficient the allegation that "defendant negligently drove a motor vehicle against plaintiff." No longer would the objection that negligence was a legal conclusion hold sway."*

    d. Form 9, which should encompass all that is needed to file a complaint and survive pleading free from dilatory motions like 12(b), is so short compared to modern lawsuits it is shocking:

7

e.  Marcus states, regarding Clark, Moore, and pleading motions: "*Nonetheless, he (*Clark*) had little patience with the use of a "mere formal motion" to challenge the sufficiency of the pleadings because it "really decides nothing of substance." Clark's protege, Professor Moore, emphasized in his treatise that pleadings need "do little more than indicate generally the type of litigation that is involved."'Rather than dwell on pleading niceties, under the new system litigants were to use the expanded discovery mechanisms provided by the Federal Rules to get to the merits of the case. Armed with that information, they could in appropriate cases move for summary judgment, allowing the court to decide the merits. Normally, however, the proper method for resolving them was trial by jury.*"

f.  "*The liberality of the pleading requirements is reflected throughout the Federal Rules. Thus, amendment of pleadings is freely granted, even after trial, and the court is admonished in any event to grant the parties whatever relief they are entitled to after trial, whether they have requested it or not. By the time Conley v. Gibson was decided, the stage seemed set for assuring litigants decisions on the merits*."

17. The courts endorsed Notice Pleading for decades, most notably in Conley v. Gibson and subsequent cases quoting Conley, as Marcus details in REVIVAL OF FACT PLEADING: "*Whatever the earlier function of pleadings, the stated modern justification is limited to notice. Conley v. Gibson itself appeared to endorse the notice pleading idea, which the Supreme Court had previously suggested was the sole purpose of pleadings.' Since Conley, the received learning has been that the function of pleadings is to give notice. Even where Rule 9(b)'s particularity requirement applies, some courts routinely deny pleading motions if they believe defendant has sufficient notice to prepare an answer, sometimes even though the complaint itself fails to provide notice.' ' According to this approach, defendant's desire for further information about plaintiff's claims should be handled later through discovery*

8

*and other pretrial procedures.112 108. See Hickman v. Taylor, 329 U.S. 495, 501 (1947) (Federal Rules "restrict the pleadings to the task of general notice-giving.")."*

18. The history and purpose of Notice Pleading, and the supporting text of FRCP 8(a)(2), are clear about the purpose of the pleading stage of any lawsuit: to give notice to opposing parties about the nature of the complaint, and nothing else. The Dissent in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (TWOMBLY) reaffirmed this quoting Clark directly: *" "Experience has shown … that we cannot expect the proof of the case to be made through the pleadings, and that such proof is really not their function. We can expect a general statement distinguishing the case from all others, so that the manner and form of trial and remedy expected are clear, and so that a permanent judgment will result." The New Federal Rules of Civil Procedure: The Last Phase—Underlying Philosophy Embodied in Some of the Basic Provisions of the New Procedure, 23 A. B. A. J. 976, 977 (1937) (hereinafter Clark, New Federal Rules)."*

19. Over time, the members of the LEGAL CLASS have twisted this process into something it was never intended to be in modern times, and into something it was explicitly designed to avoid, in an attempt to **create extra billable hours** for the members of the LEGAL CLASS, to defend large corporate interests, and to extinguish competition in the courts from citizens not part of the LEGAL CLASS. While much of this process has presumably been a slow, steady process conducted by individual opposing lawyers similar to the way countries escalate attacks and techniques in an arms race, there are certain specific actions taken by the LEGAL CLASS which specifically and greatly accelerated the court's departure from this norm. The most notable of these events based on my research appears to be the Supreme Court's ruling in TWOMBLY.

20. TWOMBLY turned 'Notice Pleading' entirely on it's head, without making any changes to the FRCP, and in contrast with all the previous case law, because the majority Justices of the Supreme Court were apparently "puzzled" by the purpose of pleading, generally. Supreme Court Justice Stevens himself, writing the Dissent for this case, has called this departure from settled procedural law "dramatic:" *"Two practical concerns presumably explain the Court's dramatic departure from settled procedural law."*

21. The glaring 'misunderstandings' and contrasts in this ruling are many, and it's hard to understand how Supreme Court Justices could make such glaring mistakes if they were not

purposely calculated to serve the judiciary and it's high paying corporate beneficiaries, at the expense of all other citizen parties:

a. The Majority in Twombly close the opinion with this statement, for example: "*Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.*" The Majority claims in the first part of this statement that they do not require heightened fact pleading of specifics, but clearly do raise the standard for pleading from "conceivable" to "plausible" in the very same paragraph.

b. The Majority mentions "plausibility" multiple times in this opinion, reinforcing the new standard, and making decisions about 'plausibility' that should be left to trial: "*We think that nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy.*"

c. The Majority affirms it is retiring the standards of Notice Pleading, confirmed in Conley, without any modifications to the FRCP: "*Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the Conley Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard*"

d. The Majority also states, in direct contrast to Conley and basically all historical standards regarding the modern FRCP and Pleading: "*Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.[Footnote 8]*" There is simply no logic, reference, or history to support this bizarre claim.

e. The Majority stated regarding the Appeal Court's reading of Conley: "*This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals appears to have read Conley in some such way when formulating its understanding of the proper pleading standard, see 425*"

*F. 3d, at 106, 114 (invoking Conley's "no set of facts" language in describing the standard for dismissal).[Footnote 7]   On such a focused and literal reading of Conley's "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery."* Despite the Majority's skepticism, the appeals court was exactly right, "*Rule 8(a)(2) was drafted carefully to avoid use of the charged phrases "fact," "conclusion," and "cause of action,"* because these determinations are outside the scope in which JUDGES should be operating at this stage in a lawsuit. See paragraph 15 (c) in this complaint.

f.  In supporting this strange 'Plausibility Pleading' model, the Majority even goes so far as to do the work of the corporate defense team, which should be done at trial, by using an alternative explanation to dismiss the plaintiffs' claims of conspiracy: "*it was not suggestive of conspiracy, not if history teaches anything. In a traditionally unregulated industry with low barriers to entry, sparse competition among large firms dominating separate geographical segments of the market could very well signify illegal agreement, but here we have an obvious alternative explanation.*" At this stage of this complaint, all inferences should have been made in favor of the plaintiff, but the opposite has occurred, and stunningly, in a poor exercise of logic. The presence of a competing theory does not in itself make a theory implausible. I have included a description of this problem from AI engine Deepseek to illustrate this problem. While we shouldn't be relying on AIs or LLMs to produce case law or documents, they do illustrate very basic concepts understood in the English language well:



g.  The exact reason "*Rule 8(a)(2) was drafted carefully to avoid use of the charged phrases "fact," "conclusion," and "cause of action"*" cannot be more evident. The Majority dismisses the fact that a CEO made a public statement illuding to conspiracy multiple times throughout this opinion, the statement: "*that competing in the territory of another ILEC " 'might be a good way to turn a quick dollar but that doesn't make it right,' "*" This illustrates the means by which modern JUDGES are dismissing claims under the same false pretenses and is the reason this analysis of TWOMBLY is included in this complaint:

The Majority goes as far as to claim "*the complaint does not set forth a single fact in a context that suggests an agreement.*"

The Majority stated: "*Although in form a few stray statements speak directly of agreement,[Footnote 9] on fair reading these are **merely legal conclusions** resting on the prior allegations.*"

The Majority stated : "*we agree with the District Court that nothing in the complaint intimates that the resistance to the upstarts was anything more than the natural, unilateral reaction of each ILEC intent on keeping its regional dominance.*"

h.  All that should have been necessary to the TWOMBLY complaint to proceed, in theory, was a fact, like the statement made by the CEO, and any "cognizable legal theory," which despite the confusion of the Majority here is clearly just a cause of action:



Would it be fair to characterize the "Causes of Action" in a legal complaint as "legally cognizable rights of action?"

Yes, it would generally be fair to characterize the **"Causes of Action"** in a legal complaint as **"legally cognizable rights of action."** Here's why:

1. **Causes of Action**: These are the specific legal claims or theories that a plaintiff asserts in a complaint to seek relief from the court. Each cause of action is based on a recognized legal right or principle, such as breach of contract, negligence, or violation of a statute.

2. **Legally Cognizable Rights of Action**: This phrase refers to claims or rights that are recognized by the law as valid grounds for bringing a lawsuit. A "legally cognizable" claim is one that the court has the authority to address and that meets the legal requirements for standing, jurisdiction, and substantive law.

When a plaintiff includes a cause of action in a complaint, they are essentially asserting that they have a **legally cognizable right of action**—meaning they have a valid legal basis to sue and are entitled to seek a remedy from the court. If a cause of action is not legally cognizable, it may be dismissed by the court for failing to state a valid claim.

In summary, the "Causes of Action" in a complaint represent the plaintiff's assertion of their "legally cognizable rights of action," provided those claims are valid under the law.

22. While I will not burden this complaint with the complete Dissent from TWOMBLY, the entire dissent is logical, reasonable, and expresses the same conclusions I have come to regarding this ruling and the problems with "Plausibility Pleading." Each party to this complaint should review it thoroughly. The dissent:

    a. Affirms this had been settled law for more than 50 years: "*The answer to that question has been settled for more than 50 years.*"

    b. Attacks 'plausibility' as a poor reason to dismiss a complaint: "*Does a judicial opinion that the charge is not "plausible" provide a legally acceptable reason for dismissing the complaint? I think not.*"

    c. Affirms the allegations and statement made by the CEO should be enough to survive pleading: "*In sum, respondents allege that petitioners entered into an agreement that has long been recognized as a classic per se violation of the Sherman Act.*" "*the charge that petitioners "agreed not to compete with one another" is not just one of "a few stray statements," ante, at 18; it is an allegation describing unlawful conduct.*"

    d. Affirms the Majority should have accepted as true all the factual allegations in the complaint: "*Under rules of procedure that have been well settled since well before our decision in Theatre Enterprises, a judge ruling on a defendant's motion to dismiss a*

  complaint, *"must accept as true all of the factual allegations contained in the*
  *complaint." Swierkiewicz v. Sorema N. A., 534 U. S. 506, 508, n. 1 (2002); see Overstreet*
  *v. North Shore Corp., 318 U. S. 125, 127 (1943)."*

e. Questions the motives of the Majority and implies they are serving the interests of
  corporations and lawyers: "*But instead of requiring knowledgeable executives such as*
  *Notebaert to respond to these allegations by way of sworn depositions or other limited*
  *discovery—and indeed without so much as requiring petitioners to file an answer*
  *denying that they entered into any agreement—the majority permits immediate*
  *dismissal based on the assurances of company lawyers that nothing untoward was*
  *afoot.*"

f. Calls this ruling a "dramatic" departure from settled procedural law: "*Two practical*
  *concerns presumably explain the Court's dramatic departure from settled procedural*
  *law.*"

g. Calls the conclusions of the majority "mind-boggling:" "*Rather, the theory on which the*
  *Court permits dismissal is that, so far as the Federal Rules are concerned, no agreement*
  *has been alleged at all. This is a mind-boggling conclusion.*"

h. Reminds the majority that distinguishing ultimate facts, evidence, and conclusions from
  one another is not inside the purview of judges during pleading, and calls this PRACTICE
  logically impossible: "*"it is virtually impossible logically to distinguish among 'ultimate*
  *facts,' 'evidence,' and 'conclusions.' Essentially any allegation in a pleading must be an*
  *assertion that certain occurrences took place. The pleading spectrum, passing from*
  *evidence through ultimate facts to conclusions, is largely a continuum varying only in*
  *the degree of particularity with which the occurrences are described." Weinstein &*
  *Distler, Comments on Procedural Reform: Drafting Pleading Rules, 57 Colum. L. Rev.*
  *518, 520–521 (1957).*"

i. Implies **negligence or malicious intent** on part of the majority in ignoring the
  overwhelming precedent they are discarding: "*Petitioners have not requested that the*
  *Conley formulation be retired, nor have any of the six amici who filed briefs in support of*
  *petitioners. I would not rewrite the Nation's civil procedure textbooks and call into*
  *doubt the pleading rules of most of its States without far more informed deliberation as*
  *to the costs of doing so. Congress has established a process—a rulemaking process—for*
  *revisions of that order. See 28 U. S. C. §§2072–2074 (2000 ed. and Supp. IV).*"

j.   Called this new pleading standard "irreconcilable" with established precedents and the FRCP: "*But even if the majority's speculation is correct, its "plausibility" standard is irreconcilable with Rule 8 and with our governing precedents. As we made clear in Swierkiewicz and Leatherman, fear of the burdens of litigation does not justify factual conclusions supported only by lawyers' arguments rather than sworn denials or admissible evidence.*"

k.   Implied this ruling is a "vehicle" to illegally circumvent established precedents, and called it "glaringly obvious":
"*This case is a poor vehicle for the Court's new pleading rule*"
"*But that the Court has announced a significant new rule that does not even purport to respond to any congressional command is glaringly obvious.*"

l.   Feared (correctly) this ruling would substantially impact meaningful access to justice on the merits in civil suits: "*I fear that the unfortunate result of the majority's new pleading rule will be to invite lawyers' debates over economic theory to conclusively resolve antitrust suits in the absence of any evidence.*"

23.  Legal scholars have been writing about the poor decisions made by the majority in TWOMBLY ever since this fateful ruling. Elizabeth G. Thornburg writes in "A Well-Pleaded Argument:" "*I should start by putting my own bias on the table: I think the changes to pleading standards brought about by Twombly and (especially) Iqbal are a really bad idea. Procedural systems that turn on early pleading of factual detail have failed for centuries to provide either accurate or efficient results. Rather, **gatekeeping based on pleadings encourages and rewards pleading disputes, leads to wasteful motion practice about degrees of particularity, and, worse, the dismissal of meritorious claims under conditions of information asymmetry.***"

24.  In short, the amazing difficulties I have encountered and will describe with pleading in this complaint are real, valid, fair, and well documented. The courts and the LEGAL CLASS should not dismiss these concerns lightly.

B.  12(b) Motion to Dismiss

25.  The primary culprit in the abuse of this new Plausibility Pleading standard is overwhelming the 12(b) Motion to Dismiss. FRCP 12(b) states:

*"(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:*

*(1) lack of subject-matter jurisdiction;*

*(2) lack of personal jurisdiction;*

*(3) improper venue;*

*(4) insufficient process;*

*(5) insufficient service of process;*

*(6) failure to state a claim upon which relief can be granted; and*

*(7) failure to join a party under Rule 19 ."*

26. 12(b) Motions to Dismiss, both in the cases I have filed and in civil cases generally, are **overwhelmingly lacking in merit, dilatory, and costly**. This problem of meritless, dilatory motions is overwhelmingly recognized, but also left unaddressed, by the LEGAL CLASS. The Honorable David N. Edelstein has written about this topic extensively in an essay titled "QUALITY ADVOCACY AND THE CODE OF PROFESSIONAL RESPONSIBILITY, THE ETHICS OF DILATORY MOTION PRACTICE: TIME FOR CHANGE," (QUALITY ADVOCACY), and has stated:

   a. *"That motions can cause delay and can be employed for the purpose of causing delay is no secret to the legal community. Yet despite this problem's substantial notoriety, it has received surprisingly little treatment in legal journals or case law. It is in the belief that the problem of delay should receive further consideration from the legal community that this Article is written."*

   b. *"motion practice can produce the negative effect of retarding the judicial process. Every motion requires the attention of the court, and if the number of hours required to dispose of the motion exceeds the time available for its consideration the court must postpone disposition of the motion."*

   c. *"Delay of disposition is detrimental to the adversary system. In criminal litigation, the Constitution demands speedy determinations of guilt or innocence. In civil litigation, there is no constitutional requirement of promptness; however, victimized plaintiffs and innocent defendants frequently have a strong interest in prompt relief or vindication. Moreover, it is in the public interest to expedite litigations of general concern and to maintain a system which stands ready and able to "secure the just, speedy, and inexpensive determination of every action."*

d.  "*The existing scheme of procedural and ethical rules does not significantly restrict the submission of delay-producing motions.*"

e.  "*It is the author's conclusion that, first, delay is not a legitimate objective of motion practice, and, second, in certain circumstances it is appropriate to disallow the submission of a motion even where delay is not the object.*"

f.  "*The dilatory motion provision contained in the Federal Rules has not been utilized, but even if it had been, it does not go far enough.*"

g.  "*The problem of delay deserves attention.*"

h.  QUALITY ADVOCACY points out there are multiple tools to deal with unnecessary delay, but that they are underused by the LEGAL CLASS, if used at all: "*According to the language of section 1927, the court can tax costs only upon an attorney whose motion practice increases costs unreasonably and vexatiously; delay or intent to cause delay is not necessarily sufficient. Because of the narrowness of the section and the problems of proving vexatiousness, **there have been no cases, to the author's knowledge, where this statute has been used to tax costs against an attorney solely for submitting dilatory motions**.*"

27. Patricia W. Hatamyar Moore also writes about these problems in "THE CIVIL CASELOAD OF THE FEDERAL DISTRICT COURTS," (CIVIL CASELOAD), and points out the true culprits with problems in Federal caseload: dispositive motions. She states the following:

a.  "*The Advisory Committee has blamed pretrial discovery for the supposed "cost and delay" of civil litigation for the past several decades. Assuming that there is, in fact, some unacceptable level of delay, a far more likely culprit is a rise in dispositive motions.*"

b.  "*Moreover, the long-term switch to a mode of termination by a judge before pretrial raises the specter of caseload management driving substantive decisions on dispositive motions. As an ABA representative recently testified, "[w]e caution that utilization of more and more methods to dispose of cases as quickly as possible runs the grave risk of adversely affecting the quality of justice delivered by our federal courts."102 S.1385 Hearings, supra note 8 (statement of Michael Reed). 8. The Federal Judgeship Act of 2013, Hearing on S.1385 Before the Subcomm. on Bankr. and the Courts of the Comm. on the Judiciary, 113th Cong. 30 (Sept. 10, 2013) [hereinafter S.1385 Hearings] (statement of Sen. Patrick Leahy).*"

28. REVIVAL OF FACT PLEADING addresses 12(b) specifically, and critically. It provides a quote from Professor Arthur R. Miller discussing how it is ineffective in practicality:

    c. *"Oh, you might say, we have motions to dismiss-rule 12(b)(6), the vaunted motion to dismiss for failure to state a claim upon which relief can be granted. It is a wonderful tool on paper, but have you ever looked at the batting average of rule 12(b)(6) motions? I think it was last effectively used during the McKinley administration."*

29. Established case law implies logically, if not directly, that the use of 12(b) motions should be rare, because it is only under extraordinary circumstances that dismissal is proper under 12(b), for example:

    a. *"For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981)."* Gollas v. Cnty. Of L.A.

    b. *" "motions to dismiss are disfavored and therefore, rarely granted. " citing Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005)."* Sommers v. Anixter, Inc. (In re Trailhead Eng'g LLC), CASE NO: 18-32414, 5 (Bankr. S.D. Tex. Dec. 21, 2020)

    c. *"see Brief for United States et al. as Amici Curiae in Swierkiewicz v. Sorema N. A., O. T. 2001, No. 00–1853, p. 10 (stating that a Rule 12(b)(6) motion is not "an appropriate device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint" (internal quotation marks omitted))"* Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (Dissent)

C. Pro Se Leniency

30. There is a custom in American law, well supported by case law, for the JUDGES of the LEGAL CLASS to provide a certain amount of leniency for cases and motions filed by unrepresented, or Pro Se litigants. As a Pro Se litigant, I have seen **little to no evidence that this policy is practiced in reality**. There seems to be no amount of research or study I can do to file a complaint without meeting accusations of 'conclusory allegations.' I cannot understand how I am able to make it through pleading facing the infinite dilatory motions filed by defense attorneys, the lenience provided for them, and the lack of lenience provided for my own complaints and motions. This is stunning and chilling when compared to the many references in caselaw demanding the opposite treatment. I have not been able to reach a Jury Trial with the supposed lenience I am owed vs what I am actually granted in any case I've filed. The following excerpts from case law demand this lenience:

a. *"We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U. S. 41, 355 U. S. 45-46 (1957). See Dioguardi v. Durning, 139 F.2d 774 (CA2 1944)."* Haines v. Kerner, 404 U.S. 519 (1972)

b. *"Dismissal is impermissible unless the court can say "with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears `beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957), reaffirmed in Estelle, 429 U.S. at 106, 97 S.Ct. at 292."* Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)

c. *"This court recognizes that it has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements."* Balistreri v. Pacifica Police Department Id. at 699*.*

d. *"[A] Petition filed pro se should be reviewed giving the Petition its broadest intendment, construing all allegations in favor of the pro se litigant."* Love v.St. Louis City Board of Education, 963 S.W.2d 364, 365 (Mo. Ct. App. 1998).

e. *"Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers. Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240;"* Pucket v. Cox, 456 2nd 233.

f. *"The plaintiff's civil rights pleading was 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe Plaintiff's Pleadings without regard to technicalities.""* Picking v. Pennsylvania Railway, 151 F.2d. 240, Third Circuit Court of Appeals.

g. *"A document filed pro se is "to be liberally construed," Estelle, 429 U. S., at 106, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. (internal quotation marks omitted). Cf.*

*Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").*" Erickson v. Pardus, 551 U.S. 89 (2007)

31. Stephan Landsman addresses many of the challenges I and other pro se litigants face in "THE GROWING CHALLENGE OF PRO SE LITIGATION," (CHALLENGE OF PRO SE LITIGATION), and the results of these challenges, which are grim. Each of these challenges illuminates the many reasons we pro se litigants should be afforded the lenience we are not getting:

   a. To begin with, there are not adequate and affordable legal services available for us, the poor and middle classes. "*At the very top of almost every list of the justice-system-based causes is the unavailability of legal services at an affordable price. Virtually every study and report about the pro se issue makes this point.*"

   b. "*The effect of all these developments has been to place an attorney out of reach for a substantial segment of the population—even when potential litigants have meritorious claims or an urgent need for assistance.*"

   c. "*The matter of failed representation is, thus, one for each party, not society, to deal with.*" (Criticizing this unethical and incorrect view)

   d. "*That many people with legal needs are too poor to hire an attorney has long been acknowledged. Despite this, over the past 20 years the amount provided by the federal government to support legal services for the poor has declined by a third. **Today it is generally agreed that four out of five poor people cannot get their legal needs met and that the same difficulty affects three out of five members of the middle class.***"

   e. The ABA Model Code of Judicial Conduct allows Judges wide discretion to make affordances for pro se litigants, but they rarely take it in reality, preferring to lean on 'impartial justice' as an excuse for providing less than meaningful court access: "*Recently, the American Bar Association (ABA) has added its voice to those supporting self-representation. In the new ABA Model Code of Judicial Conduct, Rule 2.6 states: "a judge shall accord [all] . . . the right to be heard . . . ." This rule is reinforced by the Commentary to ABA Rule 2.2 which assures judges that assistance rendered to pro se litigants for the purpose of ensuring that their claims are heard is not a breach of strictures requiring judicial impartiality.*"

   f. The recommendations of the honest members of the LEGAL CLASS for dealing with pro se litigants are overwhelmingly common sense, it is hard to see how most JUDGES cannot contemplate them: "*The methods by which this might be accomplished in the*

*pro se context are not mysterious and form the foundation of many of the recommendations presented at the Conference on Self-Represented Litigation. They include offering each litigant a chance to be heard on the merits; avoiding legal jargon and procedural mystification that may silence pro se litigants; encouraging behaviors that demonstrate the judge's careful attendance to each party's points; and preparing decisions that acknowledge the claims made by losing litigants as well as victors. The research data suggest that processes which lend litigants "voice" not only enhance their satisfaction but strongly influence onlookers, who tend to base their judgments about legitimacy and fairness on what they see taking place in the courtroom.*"

32. REVIVAL OF FACT PLEADING gets to the core of these problems and states the obvious truth; these changes to pleading are detrimental to the poor, which are overwhelmingly unrepresented: "*The Poor. - The Federal Rules were designed, in part, to open up the federal courts to those of lesser means, and their moderate success in this regard may have caused courts to tighten pleading requirements for the poorest plaintiffs, indigents. Some courts fear such litigants because indigents seem to have nothing to lose by bringing groundless suits. Moreover, they often sue pro se, so that insistence on details may be more likely to reveal a fatal defect than in other cases, where a lawyer alert to the defect might try to elude detection through vagueness. The actual fate of most suits brought by the indigent-victories for plaintiffs are extremely rare* **seems to justify suspicions that a particular indigent plaintiff cannot prove facts that merit relief.**"

D. Civil Jury Trials

33. The crux of the problems with plausibility pleading, abuse of dilatory motions, and the lack of pro se leniency that the court owes unrepresented litigants, is that they deprive me and the overwhelming majority of normal citizens from obtaining a civil jury trial in a modern court of law. Civil jury trials are guaranteed by the 7th Amendment of the United States Constitution. The text of the 7th Amendment is considered straightforward and is as follows: "*Amendment VII In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.*"

a. The purpose of the 7th Amendment is clear: "*The aim of the Amendment is to preserve the substance of the common law right of trial by jury" Page 295 U. S. 655*" Baltimore & Carolina Line, Inc. v. Redman (1935)

34. The 7th Amendment is a vital cornerstone to the American and English legal systems and should not be discarded or diminished under any circumstances. It is so vital that Sir William Blackstone*, in his influential treatise on English common law, called the right "'the glory of the English law' and necessary for '[t]he impartial administration of justice', which, if 'entirely entrusted to the magistracy, a select body of men', would be subject 'frequently [to] an involuntary bias towards those of their own rank and dignity'.*" Amdt7.2.1 Historical Background of Jury Trials in Civil Cases" Legal Information Institute, Cornell Law School. As an experienced Pro Se litigant, I can come to no conclusion based on my experiences with the LEGAL CLASS other than that this bias is very real, and that this bias combined with the heightened pleading standards of 'Plausibility Pleading' is depriving me of my right to a civil jury trial under the 7th Amendment.

35. Access to a civil jury trial is in fact so important to normal, rational people that it is one of the essential grievances listed against the King of Great Britain in the Declaration of Independence: "*The history of the present King of Great Britain is a history of repeated injuries and usurpations, all having in direct object the establishment of an absolute Tyranny over these States. To prove this, let Facts be submitted to a candid world… **For depriving us in many cases, of the benefits of Trial by Jury**:*"

36. Despite the awesome importance of civil jury trials, they are disappearing. Marc Galanter writes about this extensively in his essay "The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts," (VANISHING TRIAL). He states:

a. "*Within the courts, judges conduct trials at only a fraction of the rate that their predecessors did, but they are more heavily involved in the early stages of cases.*"

b. "*The portion of federal civil cases resolved by trial **fell from 11.5 percent in 1962 to 1.8 percent in 2002**, continuing a long historic decline. More startling was the 60 percent decline in the absolute number of trials since the mid 1980s*"

c. "*Although virtually every other indicator of legal activity is rising, trials are declining not only in relation to cases in the courts but to the size of the population and the size of the economy**.** The consequences of this decline for the functioning of the legal system and for the larger society remain to be explored.*"

d. "*Over the past generation or more, the legal world has been growing vigorously. On almost any measure—the number of lawyers, the amount spent on law, the amount of authoritative legal material, the size of the legal literature, the prominence of law in public consciousness— law has flourished and grown. It seems curious, then, to find a contrary pattern in one central legal phenomenon, indeed one that lies at the very heart of our image of our system—trials. The number of trials has not increased in proportion to these other measures. In some, perhaps most, forums, the absolute number of trials has undergone a sharp decline.*"

e. "*As illustrated by Table 1, dispositions have increased by a factor of five—from 50,000 to 258,000 cases. But the number of civil trials in 2002 was more than 20 percent lower than the number in 1962—some 4,569 now to 5,802 then. So the portion of dispositions that were by trial was less than one-sixth of what it was in 1962—1.8 percent now as opposed to 11.5 percent in 1962.*"

37. I have researched this topic further with data pulled directly from the Federal Courts, and this trend has steadily continued since Galanter wrote about it.

(Civil Trials in U.S. District Courts at 10-Year Intervals, 1962-2002 + Current 2023)

| Year | Civil Dispositions | Total Trials | Total Jury Trials | % Jury Trials | Jury Trials/ Citizen | Dispositions/Citizen |
|------|--------------------|--------------|--------------------|----------------|----------------------|----------------------|
| 1962 | 50,320 | 5802 | 2765 | 5.49% | 0.0015% | 0.0266% |
| 1972 | 90,177 | 8168 | 3361 | 3.73% | | 0.0423% |
| 1982 | 184,835 | 11280 | 4771 | 2.58% | | 0.0781% |
| 1992 | 230,171 | 8029 | 4279 | 1.86% | | 0.0890% |
| 2002 | 258,876 | 4569 | 3006 | 1.16% | | 0.0888% |
| 2012 | No record | No record | No record | No record | No record | No record |
| 2023 | 288,761 | 2083 | 1386 | 0.48% | 0.0004% | 0.0871% |

a. 'Civil dispositions per Citizen' has risen from .0266% in 1962 to .0871% in 2023. This is an increase of over 300%. At the same time, 'Jury trials per Citizen' has decreased dramatically, from .0015% in 1962 (already very low) to a miniscule .0004% in 2023. This data indicates a 75% reduction in 'Jury trials per Citizen.' This is \*just\* a comparison between population size, jury trials, and dispositions, it does not include other factors like the large increases in literacy and technology access among the U.S. population, which should presumably increase citizens' ability to access a civil jury trial.

38. This movement away from civil jury trials is well understood to benefit big business at the expense of the poor and middle classes, even by members of the LEGAL CLASS: "*[T]he recent sharp drop [in trials] is a component and reflection of a massive shift in legal culture that itself reflects other developments within the legal system and in the wider society. **This shift encompasses the ascendancy of business within the legal system**, as consumer of an increasing portion of legal services; the disproportionate growth of the 'corporate*

23

hemisphere' of the legal profession; and the development of think tanks, university programs, and public interest law firms promoting probusiness policies, including massive campaigns to reduce the legal obligations of business and to curtail legal remedies for others. Galanter's observations may apply equally to the slowdown in federal civil filings since 1986." CIVL CASELOAD.

E.  Federal Removal

39.  In addition to the PRACTICES described above, federal removal is overwhelmingly abused as a tool for frivolous delay and forum shopping at the expense of plaintiffs, adding to the awesome portion of cases disposed of by technicality rather than merit. It is a tool that overwhelmingly makes corporations 'master of the complaints' at the expense of plaintiffs, who should be masters of their own complaints. There are glaring problems with the way Federal Removal is being abused by corporate defense attorneys.

40.  The first glaring issue that seems plain to me as a layman, who reads the direct words of the courts with the plain meaning that is intended, and reads cases in their entirety, and not just small clipped excerpts from caselaw, is that Federal Removal should be incompatible with the 12(b) motion to dismiss, yet is used frequently in combination for frivolous purposes, with no sanction from the court.

41.  One of the conditions for invoking federal removal is contained in the 'well-pleaded complaint rule:' "*The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule" which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pled complaint. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987)*" Shaffer v. Palm Harbor Homes, Inc., 328 F. Supp. 2d 633 (N.D. Miss. 2004). This is vital when we actually stop to consider what a well plead complaint is. In Bilal v. Burns Sec. Services, 1991 U.S. Dist. LEXIS 19780 (E.D. Tex. Feb. 18, 1991), it was held that the well-pleaded complaint is a **hypothetical ideal complaint that presents only the well-pleaded facts on its face. A well-pleaded complaint is one that adequately sets forth the Court's jurisdiction, the basis for the relief claimed, and a demand for judgment**. 12(b) motions attack exactly these elements of a complaint, on technicalities. Defendants that invoke federal removal and then turn right around to attack complaints on technicalities with 12(b) motions are engaging in **frivolous motion practice** by submitting these conflicting certified

motions. This happens *all the time* and has never been addressed by the LEGAL CLASS in any case, statement, or opinion I can find.

42. Federal removal is automatic. A defendant submits a certification to the court (stipulating every time that a complaint is well-plead, by default) and the burden of proving a case should be remanded to state court falls upon the plaintiff. When this process has no oversight involved, it is easy to see how it can be a tool of delay and burdensome unnecessary costs for plaintiffs. This problem has created so much forum shopping that forum shopping is now referred to as a "national pastime for lawyers:" "*It is no wonder, then, that forum shopping by American lawyers has been described as "a national legal pastime," with entire textbooks being devoted to the practice*." The Culture of Forum Shopping in the United States by Scott William Dodson, (FORUM SHOPPING).

43. The LEGAL CLASS overwhelming accepts and encourages this costly and burdensome technical battling at the expense of plaintiffs, even as the problem grows larger each year. Dodson calls this problem excessive and states in FORUM SHOPPING:

   a. "*Further, U.S. law often encourages forum shopping*"

   b. "*And part of that commitment is grounded in the framing that, in the battle that is civil litigation, forum shopping is a strategic weapon no less legitimate than any other.*"

   c. "*Where excessive forum shopping persists, the U.S. system's answer is to promote more forum shopping.*"

44. Other legal scholars have written about the growing burdens on the legal system associated with Federal Removal and Forum Shopping, and the benefits of this practice to large corporations. In "The Mall of Litigation: The Dangers and Benefits of Forum Shopping in American Jurisprudence", (MALL OF LITIGATION), by Patrick Mullinger, Mullinger writes:

   a. "*Although the strategic maneuver of forum shopping may be disfavored, it is common in the landscape of modern litigation and, unlike malls, forum shopping appears to be growing even more popular in recent years. Plaintiff counsel must be diligent in their forum selection as to avoid removal by the defense counsel. However, this strategic decision goes against the fundamental fairness of a court by trivializing it. The practice can make jurisdictional difference paramount over even the merits of the case.*"

   b. "*This article will focus on the negative process of forum shopping in modern litigation... While forum shopping is an understandable strategy in plaintiff litigation, it subverts the fairness of the judiciary.*"

c.   "*Corporations will move or choose the location of their official headquarter in an attempt to avail themselves of particularly favorable jurisdictional discrepancies.*"

d.   "*The inherent bias of state jurors can be extremely unfavorable for defendants in civil actions, and thus removal to federal courts is common.*" This bias is something corporations should consider \*before\* they choose to do business in new states, not in the middle of a lawsuit.

e.   "*Additionally, out-of-state litigants have a higher probability of receiving favorable procedural and substantive outcomes in federal courts than in-state litigants.*" (Out-of-state litigants are overwhelming large national and multinational corporations)

45.   Federal Removal and Forum Shopping overwhelmingly add to inconvenience, cost, and delay for even well represented litigants. For unrepresented litigants, these problems and nuances represent a mountain to overcome. Any pro se litigant that wishes to challenge any national corporation's malfeasance must now thoroughly learn a large, complicated body of law just to survive pleading. It is burdensome on plaintiffs in general, and practically an insurmountable impasse for pro se litigants. It is overwhelmingly a boon to the 'repeat players' Galanter mentions frequently in his writings, which are overwhelmingly large national corporations, and should be discouraged by the courts via sanctions when it is abused. These sanctions are never issued.

46.   The excessive abuse of frivolous forum shopping is nowhere more evident than in federal removal of TCPA cases. The LEGAL CLASS is overwhelmingly overriding legislative authority in TCPA cases with these unethical, technicality-loaded arguments. The text of the TCPA, and the legislative intent behind it, is clear: to provide plaintiffs a right to have these cases heard in state court. The text of the TCPA reads: "*(3)Private right of action - A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State...*" Despite the clear text of this law, TCPA cases are overwhelmingly removed to Federal Court following the ruling in Mims v. Arrow Financial Services, LLC. While the ruling in Mims is absolutely correct because \*the plaintiff \*chose to file their claims in federal court, the potential for federal removal should never have been extended to defendants for this, federal removal is a clear conflict with the text and intent of 47 U.S. Code § 227. TCPA cases are clear examples of judicial overreach under federal removal.

F.   E-File

47. Finally, some background for E-file of cases, motions, and other documents is central to this complaint. E-file is overwhelmingly a boon to litigants, and is overwhelmingly withheld from the public by the LEGAL CLASS through a series of unconstitutional court rules, all of which have been recommended to local courts by the **Judicial Conference of the United States**.

48. PACER, the system for reviewing case documents, was established almost 40 years ago, according to uscourts.gov. An article titled "25 Years Later, PACER, Electronic Filing Continue to Change Courts" (25 YEARS LATER, PACER) provides some historical insight: "*In September 1988, the Judicial Conference of the United States approved a new way of opening information to the public, through a service known as PACER—Public Access to Court Electronic Records.*" The article, 25 YEARS LATER, PACER, also states:

    a. "*PACER's full potential became clear in the late 1990s, with the first testing of Case Management/Electronic Case Files. Where PACER allowed the public a chance to see court business, CM/ECF enabled the legal community to file and update court records electronically, without coming to the courthouse.*"

    b. "*Case Management/Electronic Case Files (CM/ECF), an electronic case management system that began in the late 1990s, have together fundamentally changed how federal courts, and the lawyers, judges and staff who work in them, perform their jobs.*"

    c. "*the benefits of online case management have been especially critical.*"

    d. "*"Were it not for the introduction of these programs," Kunz said, "the court staff would have been quickly overwhelmed by the caseload presented to us over these last 25 years.""*"

    e. "*In practice, Rose said, the online systems were "a boon to practitioners. We didn't have to keep paper files at our desk. We didn't have to send runners to the clerk's office to retrieve copies of filings. We didn't have to pay a copy charge. PACER is cheaper than old-fashioned paper files.""*"

49. The benefits of e-filing are many and obvious. There are also, to my knowledge, no drawbacks to e-filing for a person competent enough to operate a computer, or for the court system, because Court Clerks are expected to review all filings before submitting them to the docket, regardless of their source. For a full list of benefits to e-filing, the drawbacks of lack of access to e-filing, and an analysis on why blocking e-filing is unconstitutional, the parties to this suit should reference a motion I recently filed challenging the constitutionality of withholding, "MOTION Challenging Constitutionality of

Federal Rule of Civil Procedure and Local Court Rules", Trupia v. Capital One, National Association, 3:24-cv-00659-JAG, docket entry 15, in the U.S. District Court for the Eastern District of Virginia (TRUPIA CHALLENGING E-FILE).

50. As there are many benefits to e-file, and many drawbacks in lack of e-file, the courts should not have withheld this functionality from unrepresented litigants in any jurisdiction, for any amount of time, let alone 30 to 40 years, but indeed that is what the LEGAL CLASS has done, without good cause and with no explanation, across the country. The method by which the LEGAL CLASS has accomplished this deprivation of civil rights is via writing this rule into local rules of the federal courts throughout the country.

51. I have reviewed the local rules of procedure for every single federal district court across all fifty states for e-file related rules, and the overwhelming majority of federal district courts do now allow a self represented litigant to e-file, at the recommendation of the Judicial Conference of the United States, headed by defendant class representative ROBERTS.

52. Of the 91 courts I reviewed, only 22 allow self represented litigants to e-file. **75.82% of the courts reviewed do not allow pro se litigants to e-file** without special permission from the courts, or at all.

53. The list of results I recorded also contained the dates of revision for these rules. Many of these courts reviewed these rules during and after the 2020 COVID pandemic, and *still* found no problem with these rules. This is stunning, scary, and frankly, it is dystopic. Citizens were advised and pressured to stay home, to avoid social gatherings and public places, in the most draconian lockdown in American history in the events that unfolded following the COVID pandemic, but the courts still insisted (which courts were even open to the public is unknown) that litigants show up in person to hand sets of papers back and forth that were completely unnecessary. These courts' lack of concern for both American citizens' physical health and constitutional rights during this period is stunning. It is hard to imagine what concerns the LEGAL CLASS have that would overweigh these stunning obstacles between average Americans and expressing their civil rights in court, as is guaranteed by law.

54. The withholding of the basic ability to e-file documents in the modern world we live in is the most clear and obvious example of the LEGAL CLASS creating unnecessary, costly, and in some cases insurmountable burdens for the rest of American citizens that are not part of the LEGAL CLASS. The benefits for all parties are overwhelming, the inconvenience and

costs of paper filing are clear, and yet the LEGAL CLASS strongly defends these rules at every opportunity. These rules are clearly unconstitutional, and no judge has been able to provide any justification for them that I can find, see again TRUPIA CHALLENGING E-FILE and the responding order from the court, docket entry 18.

## V.    ALLEGATIONS

A. Allegations

55. The BACKGROUND section in this complaint is full of accurate historical references, statements made by the LEGAL CLASS, and statistics, all of which are FACTS supporting my allegations; I restate these paragraphs as facts if necessary, and allege the following against all class members.

56. The PRACTICES described in this complaint amount to Gatekeeping. The LEGAL CLASS' role in gatekeeping has been long recognized by the LEGAL CLASS itself:

   a. In "Plausible Theory, Implausible Conclusions A Response to William H.J. Hubbard, A Fresh Look at Plausibility Pleading, 83 U Chi L Rev 693 (2016)" (PLAUSIBLE THEORY), the author, Lonny Hoffman, states: "*Hubbard points out that the lawyer's gatekeeping role is "well understood,"* "

57. Hubbard himself discusses the gatekeeping role of both judges and attorneys multiple times throughout "A Fresh Look at Plausibility Pleading" (FRESH LOOK), and cites references for this:

   a. "*Plaintiffs' attorneys, not judges, are the gatekeepers to court,*

   b. *Scholars tend to describe the pleading requirements of the Federal Rules of Civil Procedure as making judges the gatekeepers to the federal courts.*"

   c. "*As originally envisioned by the drafters of the Federal Rules, and as affirmed in the seminal case Conley v. Gibson, the gatekeeping function of federal judges was minimal: "notice pleading," which required only that a pleading give the defendant notice of the plaintiff's grievance.*"

   d. "*Judges serve a minimal gatekeeping function because plaintiffs and their lawyers are the primary gatekeepers to the courts.*"

   e. "*Of course, that plaintiffs' attorneys are the gatekeepers to the civil justice system has long been recognized. See Herbert M. Kritzer, Contingency fee lawyers as gatekeepers in the civil justice system, 81 JUDICATURE 22 (1997). Kritzer notes: "Lawyers, particularly contingency fee lawyers, are gatekeepers who control the flow of civil cases into the*

*courts." The relevance of this fact to pleading practice, however, has received scant
attention."*

58. The "gatekeeping" PRACTICES described throughout this complaint describe the method by
which the LEGAL CLASS maintains its monopoly on the legal system. The monopolistic
practices described in this complaint are odious to our form of government and should not
be tolerated further by this court or by the defendants to this suit. Dissenting for United
States v. E. C. Knight Co., 156 U.S. 1 (1895), legendary Supreme Court Justice Harlan
(JUSTICE HARLAN) said: "*Monopoly in trade, or in any kind of business in this country, is
odious to our form of government. It is sometimes permitted to aid the government in
carrying on a great public enterprise or public work under governmental control in the
interest of the public. Its tendency is, however, destructive of free institutions, and
repugnant to the instincts of a free people, and contrary to the whole scope and spirit of the
federal Constitution, and is not allowed to exist under express provisions in several of our
state constitutions. . . . All combinations among persons or corporations for the purpose of
raising or controlling the prices of merchandise, or any of the necessaries of life, are
monopolies, and intolerable, and ought to receive the condemnation of all courts.*"

59. The culmination of the PRACTICES of the LEGAL CLASS described in this complaint have
prevented me from receiving **meaningful court access and any access to a civil jury trial**,
which I am guaranteed by law under the Constitution of the United States. These practices
collectively amount to Deprivation of Civil Rights, Conspiracy against Rights, and denial of
the protection guaranteed by 28 U.S. Code § 453 - Oaths of justices and judges. These
PRACTICES also amount to monopolistic practices and violate the Sherman Act.

60. Members of the LEGAL CLASS have instituted these harmful PRACTICES over decades (if not
centuries) and are collectively sustaining these harmful PRACTICES. The various members of
the LEGAL CLASS that are attorneys, but not judges, overwhelming practice the harmful
PRACTICES alleged in this complaint, to the extent that I have not been able to get a single
case through the pleading stage of a lawsuit, no matter how detailed or factual my
complaints are, and no matter what jurisdiction I file in.

61. JUDGES overwhelmingly sustain these standards and fail to sanction the non-JUDGE
members of the LEGAL CLASS, no matter how egregious the abuses. These PRACTICES could
not be sustained without the malfeasance, misfeasance, and nonfeasance practiced by
JUDGES. The malfeasance, misfeasance, and nonfeasance of JUDGES flies directly against

the intent of 28 U.S. Code § 453 - Oaths of justices and judges, which states: "*Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, ___ ___, do solemnly swear (or affirm) that **I will administer justice without respect to persons, and do equal right to the poor** and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as ___ under the Constitution and laws of the United States. **So help me God.**""*

B.  Additional Allegations: The Bob Moore Case as Evidence of Systemic Barriers

62. Since filing the first version of this complaint, Plaintiff has encountered further evidence of the Legal Class's systemic barriers in a related case, Trupia v. Bob Moore Enterprises, L.L.C., Case No. 5:25-cv-00568-HE (W.D. Okla.) ("Bob Moore Case"), filed in Oklahoma County District Court on May 1, 2025, and removed to federal court on May 27, 2025. This case exemplifies how the Legal Class's practices—abusive pleading standards, dilatory removals, denial of e-file access, and attorney misconduct—deprive Plaintiff and the public of meaningful court access, as alleged herein.

63. In the Bob Moore Case, Plaintiff is suing Defendant for violations of the Telephone Consumer Protection Act (TCPA, 47 U.S.C. § 227), Oklahoma Telephone Solicitation Act (OTSA, 15 O.S. § 775C.1 et seq.), and common law intrusion upon seclusion, arising from two unsolicited robocall texts sent without Plaintiff's consent on December 16, 2024, and March 5, 2025. Plaintiff, who has filed over 700 TCPA complaints with State Attorneys General, the FCC, the FTC, the BBB, and other orgs since 2010, explicitly denies consenting to robocalls except for non-commercial Walmart grocery delivery reminders.

64. Defendant's counsel, HB Law Partners, PLLC, through attorneys Evan J. Edler and Jared R. Boyer, engaged in misconduct that illustrates the Legal Class's monopoly hold on justice. On May 27, 2025, Edler filed a Notice of Removal (Bob Moore Case, Doc. 1) listing "Office of the State Attorney General" as his affiliation on PACER, despite having left the Oklahoma Attorney General's Office (OAG) in February 2025. Edler claimed this was a "mistake" only after Plaintiff raised public alarms, but PACER records show Edler toggling between SAG and HB Law titles across cases, indicating familiarity with the system. Mulready v. Universal Casualty, 5:24-cv-00762-PRW; Rodgers v. Tahlequah, 6:24-cv-00303-JAR.

65. This misrepresentation, intentional or negligent, leveraged the state's monopoly on violence, triggering Plaintiff's fight-or-flight response, severe distress, health issues (e.g., blood in stool from excessive coffee), and fear of arrest, prompting the purchase of a cat

feeder to ensure his pet's care.. The OAG's role in the Anti-Robocall Task Force, combined with Defendant's owner, Patrick Mark Moore's, maximum donations to Oklahoma AG Gentner Drummond (at least $5,800), created a plausible appearance of corruption, chilling Plaintiff's litigation.

66. On June 2, 2025, Boyer escalated this intimidation by threatening Plaintiff with criminal prosecution for "intimidation/extortion" unless Plaintiff reduced settlement demands, contradicting assurances of no OAG ties. This threat, improper for civil attorneys, United States v. Tobins, 155 F.3d 636, 640 (1st Cir. 1998), exemplifies the Legal Class's use of bullying tactics against pro se litigants, as documented by the Federal Judicial Conference (2011) (53% of judges note represented parties exploit pro se litigants) and legal scholars. Courtroom5, Bullies: Threats of Attorneys' Fees Against Pro Se Litigants (2025).

67. HB Law's frivolous filings further demonstrate the Legal Class's abuse of pleading standards under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Their Motion to Dismiss (Bob Moore Case, Doc. 4) falsely claims Plaintiff consented to robocalls, despite Plaintiff's explicit denial (Bob Moore Compl. ¶ 10) and public history of litigating non-consented robocalls. This claim, lacking evidentiary support, violates FRCP 11(b)(3) and damages Plaintiff's reputation as a TCPA advocate.

68. The Notice of Removal (Bob Moore Case, Doc. 1) ignores TCPA's state court preference (47 U.S.C. § 227(c)(5); Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 376 (2012)) and contains a typographical error (28 U.S.C. § 116(b)), reflecting negligence. This dilatory tactic, common among the Legal Class, burdens pro se litigants, as Plaintiff, indigent and lacking e-file access, incurs costs (e.g., PACER fees, certified mail) to respond. Marcus, The Revival of Fact Pleading, 86 Colum. L. Rev. 433 (1986) (noting removals stifle merits-based resolutions).

69. HB Law's retaliatory Motion for Sanctions (Bob Moore Case, Doc. 6, June 3, 2025) and Notice of Violation (Doc. 8, June 5, 2025), filed hours after Plaintiff's Notices of Intent to Seek Sanctions (June 3, 2025, 1:39 PM vs. 5:34 PM) and before Plaintiff received the Motion (June 6, 2025) or Court Order (Doc. 7, June 7, 2025), exploit procedural traps inaccessible to pro se litigants without e-file. This manipulation, denying notice and opportunity to comply, violates due process, Mathews v. Eldridge, 424 U.S. 319, 333 (1976), and underscores the Legal Class's gatekeeping.

70. Denial of e-file access compounds these barriers. Plaintiff, unlike HB Law, cannot file or receive documents electronically, incurring delays and costs (e.g., $722.76 for certified

mail). HB Law's non-machine-readable documents, unlike Boyer's prior case (5:25-cv-00352-G), exploit Plaintiff's AI reliance, a necessity given intimidation and lack of affordable counsel. The Legal Class's monopoly on e-file access, reserved for licensed attorneys, violates equal protection by favoring the privileged, and supports Plaintiff's demand for universal e-file access.

71. The Bob Moore Case also validates Plaintiff's intrusion upon seclusion claim. Despite Plaintiff's public efforts to stop robocalls—lawsuits, complaints, social media advocacy—he remains hounded by unsolicited texts, as evidenced by Defendant's actions. Other plaintiffs have successfully alleged robocall harm (e.g., Case 2:25-cv-00452, ¶ 24), and Defendant's frivolous defense that two texts are non-intrusive ignores their context within billions of annual robocalls. The Legal Class's dismissal of such claims via Twombly/Iqbal protects corporate malfeasance, as alleged herein.

72. HB Law's failure to withdraw from the Bob Moore Case, despite the SAG title "mistake" and escalating disputes, suggests malpractice or complicity with Defendant's interests, harming Plaintiff as the target of their intimidation. Oklahoma Rules of Professional Conduct, Rules 1.7, 8.4. This misconduct, unaccountable due to the Legal Class's self-regulation, mirrors the judicial monopoly alleged in this complaint. Courtroom5, Judges Gone Wild: Is Lack of Accountability to Blame? (2025).

73. Plaintiff's visceral reaction to these abuses—fear, rage, health deterioration—stems from the Legal Class's unaccountability, as no prior case has yielded sanctions for similar misconduct. The Bob Moore Case thus reinforces Plaintiff's allegations that the Legal Class's practices, including plausibility pleading, federal removals, e-file gatekeeping, and attorney bullying, constitute a deliberate deprivation of civil rights under 42 U.S.C. § 1983, as they chill access to the 7th Amendment jury trial guaranteed to all citizens.

74. The Legal Class, through the Judicial Conference (Defendant Roberts), ABA (Defendant Bay), and state bars (Defendant Pringle), perpetuates these barriers by upholding restrictive FRCP rules, denying e-file to non-attorneys, and shielding attorneys from discipline. The Bob Moore Case demonstrates how these practices, applied in real time, exclude Plaintiff and the public from justice, necessitating the relief sought herein.

C. The Cases I Have Filed

75. In the last year, I have filed a number of cases that are completely unlitigateable do the many harmful PRACTICES of the LEGAL CLASS. These cases are by this time in various states,

mostly dismissal, for 'Failure to Prosecute.' I have not failed to prosecute these cases, I have
been prevented from prosecuting the following cases in all the ways listed in this complaint,
and all the specific following ways.

76. I filed a complaint regarding *hundreds* of unsolicited robocalls being delivered to my
phone in TRUPIA v. HERITAGE HARD ASSETS LLC, et al., NO. CIV-24-498-J. I was prevented
from litigating this case to conclusion with a civil jury trial, for many reasons, including but
not limited to the following:

   a. KYLE PATTON (PATTON), the representative for HERITAGE HARD ASSETS (HERITAGE),
      contacted me upon receipt of a demand letter regarding robocalls at the beginning
      point of this case. He attempted and failed to negotiate a resolution with me, so
      contacted a member of the LEGAL CLASS to resolve this problem with me. Within a
      single hour of PATTON failing to negotiate this case with me, I was contacted by the
      LEGAL CLASS attorney representing the initial defendant, Zachary Ludens (LUDENS).
      Despite having no time to even review the veracity of my complaint, LUDENS
      attempted to intimidate me into dropping my lawsuit and chill my civil right to file a
      lawsuit, by claiming a potential lawsuit over unrequested spam robocalls was
      "vexatious litigation." I was threatened with financial harm for following all legal rules
      and procedures correctly, for properly sending a demand letter to his client, despite
      LUDENS having literally no information about the complaint in front of him. LUDENS'
      allegations were baseless and made for the purposes of intimidation.

   b. LUDENS was in fact so dismissive of this complaint PATTON decided it was not serious
      at all, and started calling me personally, drunk with his friends, screaming death threats
      at me. PATTON and his friends claimed they knew where I lived, and would **kill me**,
      directly in plain words. I had to contact LUDENS to get them to stop.

   c. Even when LUDENS' dismissive attitude and malpractice led to death threats, both the
      JUDGES for the case in dispute, and just as importantly, the firm employing LUDENS,
      ZEBERSKY PAYNE SHAW LEWENZ (ZPSL) took no disciplinary action against LUDENS. The
      JUDGES in this case and the firm ZPSL condone this kind of poor, unprofessional, and
      threatening behavior from their associate, LUDENS.

   d. Every member of the LEGAL CLASS representing a defendant party in this case initiated
      or approved federal removal, despite the clear text of the TCPA making it a state claim,

for the purpose of creating inconvenience, a dilatory effect, a resolution on technicality rather than merit, or all of the above.

e.  Every attorney in this case, except for the defendant counsel for LEVEL 3 COMMUNICATIONS, LLC, immediately followed the federal removal with a 12(b) motion to dismiss, despite certifying the complaint was "well-pleaded" in previous filings approving of federal removal.

f.  The JUDGES in this case did not strike the motions to dismiss despite the certifications in the federal removal, refused to consider it without explanation, and did not sanction any attorneys involved for dilatory motion practice or certifying false statements.

g.  Defendant Attorney AARON TIFFT (TIFFT) submitted multiple motions with unnecessary, irrelevant, and harmful character attacks, and was not sanctioned in any way by JUDGES.

h.  I eventually challenged the constitutionality of the local e-file rules, but initially I simply asked permission to e-file as the local court rules demand. All members of the LEGAL CLASS in this case failed in their legal responsibilities to ensure equal and meaningful court access when permission to e-file was requested. Both JUDGES in this case denied my permission to e-file, and denied the constitutional challenge with no legitimate explanation. The defendant attorneys made no statement to support my right to e-file, even when explicitly challenged to in court filings, and they should have. This failure of the attorneys to support my e-file request is especially notable, and a fact that contributes to conspiracy and monopoly allegations. The courts denying me access to e-file is a potential reason to appeal any resolution of this case in their clients' favor, and my access to e-file, theoretically, does not harm their ability to represent their clients in any way. Each of these attorneys should have supported my request to e-file to ensure their client was not exposed to a risk of appeal. These attorney members of the LEGAL CLASS instead committed malpractice in order to sustain the chilling PRACTICES of the LEGAL CLASS regarding e-file rules, to maintain their monopoly hold on meaningful court access.

i.  JUDGES in this case struck multiple filings I submitted, which were important to the disposition of my case, on petty excuses despite the Pro Se Lenience I am guaranteed by tradition and case law. I never saw this lenience at any time in this case.

j.  Most stunningly, LEGAL CLASS attorney EZRA CHURCH (CHURCH), blatantly misrepresented the truth (lied) about the current state of case law in a fraudulent attempt to have this case dismissed. CHURCH stated in docket entry 58:

"Onvoy's Motion to Dismiss," "*Congress never intended to impose direct TCPA liability upon entities like Onvoy, which, in its capacity as a common carrier, merely transmits calls from one entity in the call chain to another entity in the chain.*"

"*"The regulations concerning the use of these machines apply to the persons initiating the telephone call or sending the message and do not apply to the common carrier or other entity that transmits the call or message and that is not the originator or controller of the content of the call or message." S. Rep. No. 102- 178, at 9 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1977; see also Remarks of Sen. Hollings, 137 Cong. Rec. S. 18785 (November 27, 1991)*"

"***Onvoy is precisely the type of carrier the legislative history makes clear cannot be liable since it does not originate or control the content of any call or message.***"

This is not accurate, modern case law does not match these statements. The references CHURCH relies on are old history from the 90s. The modern opinion addressing the matter of common carrier immunity in circumstances like these is *Mey v. All Access Telecom, Inc., 5:19-cv-00237-JPB, 2021 U.S. Dist*. In a 40 page opinion, the courts made clear that "***Based upon the allegations of the Second Amended Complaint, this Court cannot find, at this point, that the defendants are entitled to immunity as common carriers.***"

While some attorneys might be faulted for *just* making a mistake in excluding this case law from their analysis, CHURCH cannot be one of them. To begin with, Mey v. All Access is a very notable case in TCPA litigation. Second, Onvoy was one of the defendants in Mey v. All Access. Third, and most dammingly, CHURCH himself was the counsel for Onvoy in Mey v. All Access, the **losing lead** attorney receiving this opinion from the court.

DIANA MEY,

Individually and on behalf of a proposed class,

**Plaintiff(s),**

v.

ALL ACCESS TELECOM, INC., et al,

Civil    **NO:** 5:19-CV-237

**Defendant(s).**

## APPLICATION FOR ADMISSION *PRO HAC VICE*

I verify that I have fully complied with Local Rule of General Practice and Procedure 83.02 as it relates to admission to practice *pro hac vice.*

| Ezra Dodd Church | Inteliquent, Inc. |
|---|---|
| Applicant's Name | Representing (Party Name) |
| Morgan, Lewis & Bockius LLP | 1701 Market St., Philadelphia, PA 19103-2921 |
| Name of Applicant's Firm | Applicant's Office Address |
| (215) 963-5710 | (215) 963-5001 |
| Applicant's Office Telephone Number | Applicant's Office Fax Number |

ezra.church@morganlewis.com

Applicant's Email Address

Bar number where admitted, with name, address, and telephone of State Bars where admitted:
Bar # and State:

PA Bar # 206072 - Supreme Court of Pennsylvania, 468 City Hall, Philadelphia, PA 19107, (215) 560-6370

NJ Bar # 03695-2007- State of New Jersey Board of Law Examiners, 25 Market St., 8th Floor North Wing, Trenton, NJ 08611, (609) 815-2911

LA Bar #29796 - Louisiana Supreme Court, 400 Royal St., Suite 4200, New Orleans, LA 70130-8102, (504) 310-2300

CHURCH made statements he knew are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). The JUDGES of the OKWD court did not sanction CHURCH for this egregious abuse, even after receiving an extensive motion detailing this misrepresentation ad violation of FRCP 11(b)(2).

It is also notable that Mey v. All Access also addressed jurisdiction concerns regarding the common carriers involved in my case. The LEGAL CLASS attorneys in this case also made frivolous motions to attempt to dismiss this suit on jurisdictional technicalities.

k.  All members of the LEGAL CLASS involved in this case acted in concert to prevent me from taking the corporate defendants to a civil jury trial, which I am guaranteed by law.

77. I filed a complaint when my bank, CAPITAL ONE BANK, NA, (C1), froze my account for sending a family member $5,000 in survival money, and provided absolutely no way to unfreeze my account. I understand false positives can happen and that the bank is required to take certain security and freezing measures under the Bank Secrecy Act, but I did not file this complaint over the freeze. I filed the complaint because C1 guaranteed me, over the phone, that there was literally no way to contact anyone to unfreeze my account due to their malfunction 'app' being the only point of contact for such a request or demand, see TRUPIA v. CAPITAL ONE, NATIONAL ASSOCIATION, 3:2024cv00659. A bank choosing to withhold over ten thousand dollars with absolutely no way to retrieve it is clearly a reasonable cause to file a lawsuit. I was prevented from litigating this case to conclusion with a civil jury trial, for many reasons, including but not limited to, the following:

    a. The attorney members of the LEGAL CLASS immediately removed this case to federal court, despite the fact that I had clearly submitted to C1's local jurisdiction, for the purposes of creating delay and inconvenience. Whether or not this is appropriate under modern convention, it is clearly an abuse of federal removal, it served no purpose but forum shopping to enable the defendant LEGAL CLASS members to employ technical arguments, instead of merit, to delay, inconvenience, and litigate this case.

    b. The JUDGE, Judge John A. Gibney, Jr, again denied my challenge to the constitutionality of the e-file rules, with a sparse explanation that defied logic, see docket entry 18.

    c. In the midst of her dilatory motion submissions, in her motion to dismiss, LEGAL CLASS member Juliet B. Clark, (JULIET CLARK), like TIFFT, submitted a number of **extreme, unnecessary, irrelevant, and harmful character attacks**, see docket entry 3. This submission by JULIET CLARK is one of the most egregious abuses I have seen, not just because of the allegations she made, but because of the accompanying content of the 12(b) motion she filed. <u>The 12(b) motion JULIET CLARK filed was technically 100% correct regarding my causes of action being wrong</u>. I had no understanding of bailment previous to filing this claim, and due in part to statements made by the defendants, misunderstood the nature of my bank account and my relationship with the bank through this account. There was simply no need for the vicious character attacks JULIET CLARK employed when the content in her 12(b) motion was more than enough to either dismiss the causes of action I employed or send me back to scratch writing an entirely new complaint. Both the large and well recognized national law firm of

McGuireWoods LLP and JUDGE Gibney failed to take any disciplinary actions or sanctions against JULIET CLARK. The purpose of these attacks was to influence the judge against me and to insult me. She succeeded, and her motions are another large part of the reason I decided to write and file this complaint.

d.  JULIET CLARK continued to abuse the docket in order to make unnecessary character attacks by submitting private email communications under the pretense that she was 'helping me' make a deadline for document submission, see docket entry 7 and docket entry 13 for notice to the courts regarding this issue. My motion for Extension of Time arrived literally the same day she submitted the private email communications, there was absolutely no need for the submission, and the only purpose her submission served was delivering more character attacks. If JULIET CLARK had any concern about my motion arriving in a timely fashion, she could have contacted me by phone or email to discuss it first, or could simply have told the court the motion was in the mail. Instead she used the opportunity to include private communications to make unneeded character attacks. Again, McGuireWoods LLP and JUDGE Gibney failed to take any disciplinary actions or sanctions against JULIET CLARK after receiving a complaint and notice regarding these actions, see docket entry 18.

e.  In the most petty legal move I have ever seen in my life, JULIET CLARK even went so far as to write and file a response to my motion challenging the constitutionality of the e-file, which she admits has nothing to do with her or her client, attaching a previous order from a different case entirely to encourage the JUDGE not to grant me e-file.

f.  JULIET CLARK's 'litigation' of this case was inflammatory, intended to be inflammatory, unprofessional, abusive, and she is an embarrassment to a supposed professional nationwide law firm like McGuireWoods LLP.

78. I filed another complaint regarding scores of unsolicited robocalls being delivered to my phone in Trupia v. Peerless Network Inc, 5:2025cv00023. I carefully tailored this complaint in every way to avoid Federal Removal, completely dissatisfied with the complete lack of meaningful court access in OKWD. I completely avoided any federal causes of action, and the defendant Peerless Network, (PEERLESS), should have been registered in my state to do business, negating any concerns about diversity jurisdiction. Again, Mey also addresses this issue. PEERLESS has meaningful commercial contact with Oklahoma thousands, if not hundreds of thousands of timer per day. Despite this careful tailoring, it was proven to me

again I am never 'master of the complaint' when I file a lawsuit against a rich corporation, because of the machinations and collusion of the **LEGAL CLASS**. The case was removed to Federal District Court so I was again to be subject to the OKWD federal court, where I am completely prevented from e-filing unconstitutionally, and where any important motions I file are thrown in the trash due to the lack of pro se lenience provided by this court, and where none of my arguments are considered. Frustrated to again see federal removal to the OKWD, and completely chilled, I decided to begin preparing this complaint instead of submitting to the completely ineffectual court process the JUDGES of OKWD have prepared for me.

a. For the record, the attorney for PEERLESS was polite and professional. While I her federal removal was dilatory motion practice and designed to inconvenience, she was at least not abusive, dismissive, or rude.

79. I have over five million dollars ($5,000,000) in verifiable and reasonable damages across these lawsuits I have had to attempt to litigate in federal district court, when the gross damages of the TCPA and OTSA are considered. I have been completely prevented from receiving any meaningful court access or access to a civil jury to rightfully collect compensation for these damages. The combined PRACTICES of the LEGAL CLASS across these actions has been so chilling I have not been able to continue even with millions of dollars on the line... Millions of Americans are similarly entitled to damages like this with the proliferation of illegal robocalls they are receiving. This should be incredible incentive for all these parties to pursue these damages. The only reason this does not happen is because public sentiment is overwhelmingly (and correctly) a belief that meaningful court access is only for rich people. The huge amount of money available here for plaintiffs, and the nationwide lack of attempts to collect it, can only be attributed to the chilling PRACTICES of the legal class, who control every aspect of the system intended to resolve these matters, the courts.

D.  The Cases I Intend to File

80. I, like all the other non-rich members of the American Public, am awash in corporate malfeasance, misfeasance, and nonfeasance. At this point it permeates every aspect of American Life. Major corporations overwhelmingly know there are little to no consequence for malfeasance and corporate fraud, and are all seemingly in a race to the bottom trying to outcompete each other by collecting money without delivering promised goods and

services, or by using other people's property without any kind of permission or contract. They often call the techniques they are employing 'cost cutting,' but rational people can see these techniques are far more extreme and illegal than 'cost cutting.'

81. There are a large a number of cases I still wish to file, but cannot because I am swamped in dilatory and frivolous defense motions. Meaningful court access is being withheld on these matters as well, because I am running out of time to litigate these cases within the statutes of limitations for these matters. Every one of these matters is a reasonable cause for a lawsuit, and matters that apply to thousands if not hundreds of thousands of Americans. The following are just some examples of these cases, and do not represent the entirety of the cases I am being deprived of filing and litigating.

82. Best Buy Co Inc (BEST BUY) falsely advertises services it does not provide in truth to add small upsells to appliance purchases. BEST BUY offered "installation" for a dishwasher I purchased, but when the dishwasher was delivered, the BEST BUY employees explained that 'they aren't plumbers' and performed no installation. How they can offer "installation" as a service, but also require you to pay a completely different serviceman for "installation," is beyond my understanding. While this might seem like a petty issue, there is a more notable problem I discovered in my interactions with BEST BUY after I sent them a demand letter to install the dishwasher I purchased with "installation."

   a. Most incredibly, BEST BUY directly confirmed they employ a stunning, chilling policy I have observed with many large corporations: Their legal department does not respond to any legal demands or demand letters unless they are sent by the LEGAL CLASS. BEST BUY legal department does not engage with non-represented parties under any circumstances unless a complaint is filed with the courts. The same corporations employing this policy regularly request extensions of time in the beginning of every case. These requests for extended time should never be granted when defendants make no attempt to respond to demand letters in good faith, they clearly choose not to recognize these matters until the moment a case is filed against them. Defendants that **choose** not to use this time should not be granted extra time at the expense of plaintiffs' need for 'securing just, speedy, and inexpensive determination of every action and proceeding.'



Hi, Anthony,

Thanks for the detailed response, and for the clarity! I will take your response to mean you have not signed a letter of retention with legal counsel, or have filed suit in a court-of-law. As long as these two things are true, I would be able to interact with you moving forward.

To be very clear. Our legal team does not directly interact with a customer; this is true regardless of their specific circumstances. If you do retain a lawyer, they would respond to any communications sent to them by legal counsel providing proof of representation in a specific matter. Or, if instead a law-suit is filed they would communicate via the normal legal channels. This would not be forwarded back to our legal team, and they will not be responding to you directly in regards to the letter sent to them.

If you want me to see if there is any possible resolution to your concerns, please reply back to this email confirming your mailing address. I would also need you to detail what the exact additional costs were being requested by your service provider, the specific details as to what work needed to be done, and what the exact cost of each service was going to be. I look forward to hearing from you!

Executive Resolution Specialist

Phone: (612)          | Email: BestBuyCorporateTeam@bestbuy.com

Best Buy Stores, L.P.

7601 Penn Avenue South, Richfield, MN 55423, USA | BestBuy.com

b.

c. Based on my knowledge and experience, I am confident the overwhelming majority of large American corporations have adopted this policy under the direction of the LEGAL CLASS in a nationwide chilling effect designed to maintain the monopoly hold the LEGAL CLASS has on the American legal system. The overwhelming majority of American corporations are all owned by the same investors, all of which include a large investment company "Legal General Group PLC" (LEGAL GENERAL), an investment group entirely comprised of LEGAL CLASS members. It is implausible that such a large and specialized group is not giving all these corporations the same *consistent* legal advice and directives. I have not been able to find a single company listed on the NYSE or NASDAQ that does not include and does not primarily consist of these investment companies, including BEST BUY. The following image is an ownership map for BEST BUY:



d.

83. To further illustrate the wide reach of these investors and LEGAL GENERAL in employing this chilling effect, I provide the following ownership maps of large American Corporations we are all familiar with:

a.  Capital One National Association, whom I have a current lawsuit against:



b.  Lumen, whom is a defendant in my HERITAGE case:



c.  Oracle, whom I have opted out of a class action lawsuit against:



d.  Airbnb, whom I just generally hate, but cannot sue due to the statutes of limitations:



e.  Microsoft, whom I intend to sue eventually:



f.  NVIDIA, whom is currently cooperating with many other American companies on an AI based copyright infringement scheme that's likely going to ruin the American economy:



g.  And finally, Blackrock Inc, which is a major investor for every one of the companies described above. As the courts and public can see, LEGAL GENERAL is a major owner in Blackrock Inc, and thus a major investor in every one of the above listed companies:



h.  Many of the PRACTICES I have described in this complaint, like this chilling PRACTICE, are anti-consumer and pro-business; the ascendancy of business in law is plain to see, as Hatamyar Moore said in CIVIL CASELOAD. It is plausible that the most affluent members of the LEGAL CLASS are coordinating these anti-consumer policies, the PRACTICES described in this complaint, through LEGAL GENERAL, and that less affluent

members of the LEGAL CLASS carry out these PRACTICES for personal financial gain at their direction.

84. I intend to sue Cox Communications (COX) for delivering substandard services to poor residential areas. The service provided by COX has been spotty and unreliable, and when questioned about it, they lie and claim that personally owned hardware at the residential site is at fault. I purchased a second, $100+ router to confirm that the issues were indeed service provider related.

85. I intend to sue Mazda Motor Corporation for TCPA violations. After what I can only describe as a disastrous attempt to receive service to my Mazda car at a local dealership, because Mazda now requires all dealerships transfer all incoming phone calls overseas to a corporate telecoms center, MAZDA sent me illegal robocalls and texts multiple times afterwards in an attempt to sell more service, with no consent.

D. Damages

86. While I have over five million dollars, $5,000,000, in potential outstanding damages related to the cases I have not been able to litigate, the damage does not end there. The coordinated PRACTICES of the LEGAL CLASS, which amount to gatekeeping and a monopoly hold of the LEGAL SYSTEM, have wide reaching effects that affect all of society, which I am forced to live with.

87. There is simply no accountability for members of the LEGAL CLASS and the rich, corporate parties they serve. All our institutions and the companies we have grown up relying on are overwhelmingly considered broken by the wider public. The Edelman 2020 Trust Barometer sums up this growing lack of trust perfectly in one image, "No Institution Seen as Both Competent and Ethical." Notably, government, where we all expect accountability to come from and do not see accountability coming from, is by far the least trusted institution:



88. I and other Americans are paying hefty prices for all our goods and services right now, and we should not be surrounded by broken institutions constantly taking advantage of us. This is material damaging to my and other Americans' way of life. <u>It prevents the pursuit of happiness</u>.

89. I and other Americans are being exposed to increasing dangers from the political discontent driven by this lack of accountability regularly. People are laying down in the street in front of cars, throwing paint on priceless works of art, taking over buildings and college campuses, setting luxury items like cars on fire, and even now targeting individual civilians in these alarming acts of political discontent. Most concerningly, as we all know, this political discontent with this lack of corporate accountability has become so bad the CEO of a major company, United Healthcare (UHC), was murdered by a malcontent assassin. The alleged killer, Luigi Mangione (MANGIONE) has been celebrated by a large portion of the public in a reaction that has stunned the upper class, and the upper class alone. People are so discontent that they celebrate the murder of this UHC CEO; there are portraits of MANGIONE across the internet and on the streets, **often painted as a Saint**. He has cliques of fan girls writing him letters, and many, many donations to cover his legal fees. There has already been a copycat attempt on the life of another CEO as well. The American public's reaction to this is absolutely unprecedented. It is a sure sign of social malcontent with lack of accountability for the upper class, and the responsibility for this lack of accountability cannot fall anywhere but upon the LEGAL CLASS, the shepherds of our justice system.

VI.    **E-FILE AND DISMISSAL**

90. OKWD should immediately grant me the privilege of e-filing for this case. E-file is central to this suit, I have alleged it is discriminatory and damaging to my ability to litigate this case not to have access to E-filing. Color, for a basic example, is important to the images used in this filing, and I do not have and cannot afford a color printer.

91. For a number of important reasons neither the court nor the defendants to this case should attempt to dismiss this case on technicalities with a 12(b) motion to dismiss.

    a. Motions to dismiss should be rarely granted, are at the center of this suit, and I am a pro se litigant; I am entitled to the lenience necessary to move this case forward to a civil jury trial.

    b. I have named the jurisdiction, I have included over 40 pages of facts, and I have included legally recognized causes of action; nothing further should be necessary to submit this complaint free of 12(b) attacks.

    c. Most importantly, the honor of the courts, generally, is at issue throughout this complaint, and with the public generally. This complaint details many allegations of monopoly gatekeeping practices, allegations that the LEGAL CLASS, with a false sense of superiority, colludes to deprive me and the entire American public of **meaningful ability to resolve our commercial grievances legally**. In Plessy v. Ferguson, 163 U.S. 537 (1896), JUSTICE HARLAN said, in a dissent that is now famously called "Harlan's Great Dissent": "*In the eye of the law, there is in this country no superior, dominant, ruling class of citizens. There is no caste here. "Our constitution is colorblind, and neither knows nor tolerates classes among citizens. In respect of civil rights, all citizens are equal before the law. The humblest is the peer of the most powerful...*" This court should not use it's extensive technical knowledge of and experience with the law to dismiss this case because of it's humble origin.

    d. Finally, I have done the work. I have not laid down in the street in front of cars; I have not damaged priceless works of art; I have not taken over any buildings; I have not vandalized any property; I certainly have not resorted to violence or any means illegal in any way, shape, or form to air my grievances. As us laymen say, "I have come correct." I have read and cross referenced thousands and thousands of pages of statutes, rules, codes, case law, and essays written and distributed by the LEGAL CLASS. I have collected the data for and presented statistical proofs of the deleterious effects this is having on the American public and legal system, and on me personally. I have struggled

my way through many cases while the LEGAL CLASS has continually abused its power to obstruct meaningful court access. I have done, literally, everything I can think of to research and write this complaint *properly.* A dismissal of this suit on technicalities would be a validation of everything the current growing population of illegal protesters and malcontents believes, that there is no legitimate avenue to address the growing abuses of the upper class. John F. Kennedy famously said: "*Those who make peaceful revolution impossible will make violent revolution inevitable.*" Please do not be the kind of leaders JFK was referring to.

VII.    **CAUSES OF ACTION**

### COUNT I

### (18 U.S. Code § 241 - Conspiracy against rights)

92. The LEGAL CLASS has conspired, by the prohibited PRACTICES described in this complaint, to deprive the American public, of which I am a member, of many civil rights guaranteed by law, by depriving us meaningful access to the courts and the right to a civil jury trial under the 7th Amendment.

93. The LEGAL CLASS has knowingly and purposely planned and conspired, by means of conducting and sustaining PRACTICES described in this complaint, to deprive the American public, including me, of meaningful access to the courts and the right to a civil jury trial under the 7th Amendment.

94. The LEGAL CLASS has conspired to deny the American public, including me, of meaningful access to the courts and the right to a civil jury trial under the 7th Amendment by way of oppression, threats, and intimidation.

### COUNT II

### (18 U.S. Code § 242 - Deprivation of rights under color of law)

95. The JUDGES of the LEGAL CLASS have acted under the color of law in the establishment and sustenance of the PRACTICES described in this complaint.

96. The JUDGES of the LEGAL CLASS, by way of PRACTICES described in this complaint, have deprived the American public, of which I am a member, of meaningful access to the courts, and the right to a civil jury trial under the 7th Amendment.

97. The JUDGES of the LEGAL CLASS have acted willfully, knowingly, and intentionally conducted the PRACTICES described in this complaint to deprive the American public, of

which I am a member, of meaningful access to the courts, and the right to a civil jury trial under the 7th Amendment.

## COUNT III

### (42 U.S. Code § 1983 - Civil action for deprivation of rights)

98. The state JUDGES of the State Courts acted under color of state law for all PRACTICES described in this complaint.

99. The PRACTICES of these state JUDGES deprived the American public, of which I am a member, entirely of meaningful access to the courts and the Civil Jury Trials I am guaranteed by 7th Amendment of the United States Constitution.

100.    The PRACTICES of state JUDGES is the direct proximate cause of the injuries described in this complaint.

## COUNT VI

### (42 U.S. Code § 1985 - Conspiracy to interfere with civil rights)

101.    The LEGAL CLASS has conspired, by the prohibited PRACTICES described in this complaint, to deprive the American public, of which I am a member, of many civil rights guaranteed by law, by depriving us meaningful access to the courts and the right to a civil jury trial under the 7th Amendment.

102.    The LEGAL CLASS has knowingly and purposely planned and conspired, by means of conducting and sustaining PRACTICES described in this complaint, to deprive the American public, including me, of meaningful access to the courts and the right to a civil jury trial under the 7th Amendment.

103.    The LEGAL CLASS is motivated by a systemic class based animus: a false belief in the superiority of the LEGAL CLASS and wealthy Americans over the middle and lower classes of American, of which I am a member.

104.    The LEGAL CLASS has conspired to deny the American public, including me, of meaningful access to the courts and the right to a civil jury trial under the 7th Amendment by way of oppression, threats, and intimidation.

## COUNT V

### (42 U.S. Code § 1983 - Civil action for deprivation of rights, federally via Bivens)

105.    The federal JUDGES of the State Courts acted under color of federal law for all PRACTICES described in this complaint.

106.    The PRACTICES of these federal JUDGES deprived the American public, of which I am a member, entirely of meaningful access to the courts and the Civil Jury Trials I am guaranteed by 7th Amendment of the United States Constitution.

107.    The PRACTICES of federal JUDGES is the direct proximate cause of the injuries described in this complaint.

### COUNT VI

### (28 U.S. Code § 453 - Oaths of justices and judges

### via tort in essence)

108.    28 U.S. Code § 453 - Oaths of justices and judges creates a non-consensual duty of federal JUDGES to do equal right to the poor and to the rich.

109.    Federal JUDGES, by the PRACTICES described in this complaint, have failed to do equal right to the poor of the American public, including me, as I am poor.

### COUNT VII

### (15 U.S.C. § 2 - Monopolizing Trade)

110.    The members of the LEGAL CLASS, collectively, maintain total domination of meaningful court access and the ability to practice law, through the PRACTICES described in this complaint.

111.    The members of the LEGAL CLASS, collectively, have engaged in exclusionary, predatory, or anticompetitive conduct to acquire or maintain their monopoly hold over the legal system.

112.    This LEGAL CLASS' complete monopolistic hold over the legal system deprives the entire American middle and lower classes, of which I am a member, of meaningful access to the courts and the right to a civil jury trial under the 7th Amendment

### COUNT VIII

### (Common Law – Unjust Enrichment)

113.    The LEGAL CLASS has received many tangible benefits derived from their exclusive access to, or exploitation of the legal system, including but not limited to fees, professional status, and general economic gain. This benefit stems from their role as gatekeepers or beneficiaries of a system not equally accessible to all.

114.    The LEGAL CLASS has retained these benefits and they continue to profit or thrive professionally from these benefits, without redistributing or justifying its retention of these

benefits to the members of the American middle and lower classes, of which I am a member .

115.    It is unjust for the LEGAL CLASS to keep these benefits without compensation or accountability because the LEGAL CLASS exploits a system designed for justice, not personal enrichment. Their gains come at the expense of the American middle and lower classes, of which I am a member. No reciprocal value is provided to balance the benefit.

116.    There's no legal or equitable basis for the LEGAL CLASS to retain the benefits of the legal system for themselves and the upper class only and these PRACTICES are harmful to society as a whole.

**VIII.    CAUSES OF ACTION**

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff requests that this Court:

1. Enter judgment against all Defendants and in favor of Plaintiff for each violation alleged in this complaint.

2. Enter a permanent injunction to prevent the illegal PRACTICES described in this complaint by all Defendants.

3. Assess against all Defendants and in favor of the Plaintiff damages of five million dollars ($5,000,000) for knowingly and willfully depriving Plaintiff of all meaningful court access and right to trial by civil jury.

4. Declare the pleading standards established in Bell Atlantic Corp. v. Twombly to be unduly burdensome and contrived, and restore the fair, practical, and correct standards of pleading as articulated in Conley v. Gibson, consistent with the intent and purpose of the modern Federal Rules of Civil Procedure, to ensure accessible and equitable adjudication of claims.

5. Order Defendants to modify existing FRCP and judicial codes and standards to:

    a.  Delete 12(b) entirely from the FRCP, as Clark initially recommended, or, alternatively, to

    b.  follow the advice of the Honorable David N. Edelstein, in QUALITY ADVOCACY, and limit dilatory motions in the following ways:

    i. Changing the current statutory provision in section 1927 of the Judicial Code, taxing an attorney for excessive costs, to the following text: "*Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and*

*vexatiously may be required by the court to satisfy personally such excess costs. Costs resulting from the submission of a motion intended primarily for delay are such costs"*

ii. Adding a judicial code provision reading: *"Any attorney or other person admitted to conduct cases in any court . . . may be required by the court to satisfy personally such excess costs. Costs resulting from the submission of a motion (1) intended primarily for delay, or (2) where the attorney knew or should have known that substantial delay would result and that if granted the motion would secure very insubstantial relief are such costs."*

iii. Modify the text of Code of Professional Responsibility DR 7-102, by changing the text to: *"DR 7-102 Representing a Client Within the Bounds of the Law.*

*(A) In his representation of a client, a lawyer shall not:*

*(1) File a suit, assert a position, conduct a defense, delay a trial, or take other Action...*

*(1.5) Submit a motion intended primarily for delay or where the lawyer knows or should know that substantial delay will result and that if granted the motion will secure very insubstantial relief.*

*(2) Knowingly advance a claim that he or she knows is likely to result in substantial delay."*

iv. Amend FRCP 7 by adding the following text: *"RULE 7.5 DILATORY MOTIONS The court may treat as a nullity any motion which is (1) submitted primarily for delay, or (2) submitted by an attorney who knows or should know that substantial delay will result and that the motion if granted will secure very insubstantial relief. The court may impose disciplinary sanctions in an appropriate case."*

6. Order Defendants to issue an advisory to fellow LEGAL CLASS members that 12(b) motions to dismiss certify a complaint is "well-pleaded" and are incompatible with federal removal, and should not be filed unless major relevant changes to the nature of a case are made in Discovery or Trial.

7. Order Defendants to make e-file/CM/ECF capability equally and fully available to all litigants, including unrepresented litigants, across all federal and state jurisdictions.

8. Order Defendants to provide meaningful court access to all litigants, generally.

**IX.**                                     **DEMAND FOR JURY TRIAL**

Respectfully submitted,

/s Anthony Trupia

605 SE 21ST St.

Oklahoma City, OK 73129

516-984-0142

Trupiaar@gmail.com

Pro Se

Date: August 28th, 2025